Ann M. PALMER, Administratrix for the Estate of Joseph C. Palmer, and Ann M. Palmer, and Daphne S. Palmer, Plaintiffs,

v.

LIGGETT GROUP, INC. and Liggett & Myers Tobacco, Inc., Defendants.

Civ. A. No. 83–2445–MA.

United States District Court, D. Massachusetts.

Feb. 1, 1984.

Peter R. Tritsch, Boston, Mass., for plaintiffs.

Robert McDonnell and Francis Fox, Bingham, Dana & Gould, Boston, Mass., for defendants.

## MEMORANDUM AND ORDER

MAZZONE, District Judge.

This action arises out of the 1980 death of Joseph C. Palmer. The plaintiffs, his widow (who also sues as his administratrix) and his mother, seek damages from the defendants, claiming that the two companies' failure to warn Mr. Palmer about the health risks associated with smoking the cigarettes they produce and distribute was the proximate cause of his death. The matter is before the Court on the defendants' motion to dismiss Counts 1 through 1–D of the plaintiffs' complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6).

In those counts, the plaintiffs assert that the defendants violated the Federal Hazardous Substances Act (the "FHSA" or the "Act"), 15 U.S.C. §§ 1261–1276(d), by introducing misbranded cigarettes into commerce. The plaintiffs contend that the defendants' alleged violation of the Act gives rise to a private cause of action. The defendants argue that these counts should be dismissed for two reasons. First, they assert that the distribution of cigarettes was never subject to the labeling requirements of the FHSA. Second, they argue that violations of the FHSA do not give rise to civil actions by private individuals. I address each of these contentions in turn.

At the outset, I should note that the plaintiffs' claim that the defendants violated the FHSA is narrowly drawn. All of the alleged violations of the Act upon which the plaintiffs rely are said to have occurred between 1960, when the Act became law, and 1965. As the plaintiffs recognize, the defendants could not have violated the FHSA by introducing misbranded cigarettes into commerce after 1965, because the enactment that year of the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. §§ 1331–1340, which required that all cigarette packages bear a

uniform warning label, explicitly preempted the field of federal law with respect to cigarette labeling, and therefore eliminated any obligations the defendants may previously have had under the FHSA. *See* 15 U.S.C. § 1334(a). Thus, the question for decision is whether the original FHSA (then called the Federal Hazardous Substances Labeling Act) covered cigarettes.[1]

The original FHSA prohibited "[t]he introduction or delivery for introduction into interstate commerce of any misbranded package of a hazardous substance." Pub.L. No. 86–613 (1960) § 4(a). The Act defined a "misbranded package of a hazardous substance" as "a hazardous substance in a container intended or suitable for household use which ... fails to bear a label" describing its dangerous properties and warning consumers about them. *Id.*, § 2(p)(1). The Act provided a detailed definition of the term "hazardous substance:"

The term "hazardous substance" means:

1. (A) Any substance or mixture of substances which (i) is toxic, (ii) is corrosive, (iii) is an irritant, (iv) is a strong sensitizer, (v) is flammable, or (vi) generates pressure through decomposition, heat, or other means, if such

substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use, including reasonably foreseeable ingestion by children.

*Id.*, § 2(f). In addition, the Act defined in further detail each of the class of substances—toxic, corrosive, and the like—that the law declared hazardous. *See, id.*, § 2(g)–(m). The Act specifically stated that certain substances were not hazardous within the meaning of the Act. Materials regulated under the Atomic Energy Act were not covered, *id.*, § 2(f)(3), and the Act provided that:

The term "hazardous substance" shall not apply to economic poisons subject to the Federal Insecticide, Fungicide, and Rodenticide Act, nor to foods, drugs and cosmetics subject to the Federal Food, Drug, and Cosmetic Act, nor to substances intended for use in the heating, cooking, or refrigeration system of a house.

*Id.*, § 2(f)(2).

■ The plaintiffs argue that the Act covered cigarettes.[2] They note that the

---

**1.** In arguing that the original FHSA did not cover cigarettes, the defendants have brought to the Court's attention a variety of post-enactment materials, including statements made by members of Congress considering proposed amendments to the Act and statements made by officials of the Department of Health, Education and Welfare (HEW), the agency originally charged with the Act's administration, setting out that agency's view of the Act's scope. I have reviewed these materials, and conclude that, under these circumstances, the language of the statute and its pre-enactment history provide the most reliable guide in determining whether cigarettes were hazardous substances within the meaning of that term in the original FHSA. First, HEW's interpretation of the statute, and its decision to seek legislation explicitly bringing cigarettes within the ambit of the Act, appear to have been largely the product of its own uncertainty about the Act's scope. This uncertainty about how the Act should be interpreted should not, in my view, be given the measure of deference typically given agency interpretations that are the product of technical expertise or considerations of public policy. As for the meaning of Congress' action, that too is ambigu-

ous. Each of the actions that the defendants claim were relevant can be viewed as having been motivated by one of several concerns. For example, in enacting the Federal Cigarette Labeling and Advertising Act, Congress could have viewed itself as addressing a problem no agency, HEW included, had statutory authority to remedy. On the other hand, Congress could have sought to act immediately to prescribe a specific warning rather than allow HEW—or the Federal Trade Commission (FTC), which had already announced that it intended to begin rulemaking proceedings on cigarette advertising—to begin the slow process of administrative lawmaking. This second view of Congress' action suggests that Congress may have believed that HEW (or the FTC, or both) had authority to regulate the labeling of cigarettes. But choosing between calling Congress' action an endorsement of HEW's jurisdiction or labeling it a repudiation of the suggestion that such jurisdiction ever existed is guess-work at best, and does little to illuminate the meaning of the original FHSA.

**2.** The plaintiffs also contend that the defendants are precluded from contending that cigarettes were not covered by the Act because Liggett &

language defining "hazardous substances" is broad enough to include cigarettes, and argue that the Act's specific exclusion of some substances indicates, according to the maxim of statutory construction *expressio unius est exclusio alterius*, that those and only those substances were not covered. Indeed, the plaintiffs assert that the language of the statute is so clear as to preclude resort to the Act's legislative history. *See Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978) ("When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning.").

■ It is beyond dispute that cigarettes fall clearly within the category of substances the Act defined as "toxic" and, therefore, "hazardous"—those substances that have "the capacity to produce personal injury or illness to man through ingestion, inhalation, or absorption through any body surface." Pub.L. No. 86–613, § 2(g). I cannot conclude, however, as the plaintiffs urge, that the Act therefore clearly covered cigarettes. The Act prohibited the introduction of misbranded products into commerce when those products were "intended or suitable for household use." *Id.*, § 2(p)(1). In my view, the phrase "household use" is not so clear as to preclude a review of the Act's legislative history for guidance in determining whether the Act covered cigarettes. In this context, "household use" does not carry any single, unambiguous meaning.

■ In reviewing the legislative history, I bear in mind that the meaning of the Act is best discovered by considering the purposes it was meant to serve, *see, e.g., Bob*

*Jones University v. United States*, 461 U.S. 574, 103 S.Ct. 2017, 2024, 76 L.Ed.2d 157 (1983), and the problems it was intended to remedy, *see, e.g., Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 251–54, 104 S.Ct. 615, 623–24, 78 L.Ed.2d 443 (1984). *See also Teamsters v. Daniel*, 439 U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979) (meaning of a statute is "... revealed by its language, purpose, and history.").

The report of the Senate Committee on Interstate and Foreign Commerce concerning the Act is particularly instructive in this respect. In a section titled, "The Problem," the report said:

> In a single year, your committee was informed, there are more than 200,000 poisonings in the United States, resulting in approximately 5,000 deaths and the loss of over 89,000 man years. Your committee was told there are over 300,-000 common household products, such as furniture polish, bleaches, detergents, cleaners, etc. containing poisonous or dangerous substances that lack adequate warning labels, and adequate identification of the dangerous substances, information so necessary to the attending doctor in his effort to aid his patient.

S.Rep. No. 1158, 86th Cong., 2d Sess. 1 (1960).

The House Report on the Act contained a similar emphasis of the need to address the problem of household accidents, and also outlined the benefits that labeling hazardous household products would produce:

> Modern developments have increased the possibilities of physical injury from the careless handling of household chemical compounds.
>
> \*  \*  \*  \*  \*  \*

Myers, Inc., a corporation related to these defendants, participated as an intervenor defendant in *American Public Health Association v. Consumer Product Safety Commission*, C.A. No. 74–1222 (D.C. April 23, 1975), *vacated as moot*, No. 75–1863 (D.C.Cir. June 15, 1976), which held, in a somewhat different context, that cigarettes were covered by the Act. The plaintiffs' argument is without merit. *See* 1B J. Moore, *Moore's Federal Practice* ¶ 0.416[2], at 517 (2d

ed. 1983) ("A judgment that has been vacated, reversed, or set aside on appeal is thereby deprived of all conclusive effect, both as res judicata and as collateral estoppel."). The *American Public Health* case is, apparently, one of only two cases to address the question whether the Act covered cigarettes. In *Giannunzio v. Philip Morris, Inc.*, C.A. No. 3–81–921 (D.Minn.1982) (Order of Dismissal), the court held that the FHSA did not cover cigarettes.

Informative, uniform labeling would enable physicians to administer antidotes immediately rather than waste precious time in determining the active ingredients of the product.

H.Rep. No. 1861, 86th Cong. 2d Sess., *reprinted in* 1960 U.S.Code Cong. & Ad. News 2833, 2834–35. The House committee report listed "household silver polishes" and "household dry cleaning preparations" as examples of the kinds of products which had caused the "tragic accidents" that the Act was meant to prevent. *Id.* at 2834. An exchange between one of the original Act's sponsors, Representative Roberts, and a HEW official, Deputy Commissioner John L. Harvey, at a 1964 hearing concerning a bill that would have specifically brought cigarettes within the Act's scope, provides additional evidence about the aims of Congress in enacting the original FHSA:

MR. ROBERTS: '[The Act] was designed to cover poison or toxic substances primarily.'

MR. HARVEY: 'Household chemicals primarily, I think.'

MR. ROBERTS: 'That is right.'

*Hearings on Bills Regulating the Labeling and Advertising of Cigarettes, etc. Before the House Com. on Interstate and Foreign Commerce*, 88th Cong.2d Sess. at 45 (1964).

■ The parties agree that the subject of cigarette labeling never came up during the hearings that preceded the passage of the Act. Neither of the Committee reports mentioned cigarettes. No cigarette industry representatives appeared before Congress when it was considering the legislation. Of course, the fact that cigarettes were never mentioned during the hearings does not mean that cigarettes, having been discovered to be hazardous, were beyond the scope of the original Act. Congress often speaks in terms sufficiently broad to bring within the compass of an act problems not specifically contemplated at the time of its passage, *see, e.g., United States v. Southwestern Cable Co.*, 392 U.S. 157, 88 S.Ct. 1994, 20 L.Ed.2d 1001 (1968) (original Communications Act gives Federal Communications Commission some power to regulate cable television) and the legislative history of the FHSA suggests that Congress intended to regulate chemicals not then in existence (and, presumably, then in existence, but not then known to be harmful).

■ But it is doubtful that cigarettes—clearly toxic within the meaning of the Act—posed *the kind of danger* that Congress sought to guard against when it passed the FHSA. For, while cigarettes are, in literal terms, "suitable for household use," the legislative history suggests that the language was meant to evoke a more common-sense understanding of what one thinks of as household chemicals. Put simply, the Act essentially speaks of the kind of product one finds in the "Household Products" aisle of the supermarket. My reading of the legislative history suggests that this image should mark the Act's rough boundaries. This is the "popular picture" that the language of the statute "calls up," *see McBoyle v. United States*, 283 U.S. 25, 26, 51 S.Ct. 340, 75 L.Ed. 816 (1931) (airplane not a motor vehicle within the meaning of the National Motor Vehicle Theft Act). There is a second reason for my conclusion that cigarettes were not covered by the Act. The legislative history strongly suggests that it was the problem of household accidents, especially ones that caused injury to children, that prompted Congress to pass the FHSA. While the health problems associated with smoking are not contracted voluntarily, neither are they the product of accident. They develop slowly, over long stretches of the life of the victim. Though often catastrophic, they are rarely sudden. The aim of Congress—so the legislative history shows—was to warn consumers of the dangers of the products they brought into the house with them, and, of equal importance, to provide physicians treating accident victims with a means to identify the nature of their patients' problems. Printing on cigarette packages a label bearing the names of the chemicals the cigarettes contain is unlikely to permit any

doctor to find a quick antidote to the health problems smoking causes.

■ The plaintiffs also argue that Congress' decision to exclude some chemicals from the Act's list of prohibitions suggests that courts should hesitate before adding to the list of substances that the statute does not cover. As a general matter, that proposition has a measure of truth to it, *see National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers,* 414 U.S. 453, 458, 94 S.Ct. 690, 693, 38 L.Ed.2d 646 (1974) (reviving the maxim *expressio unius est exclusio alterius* ), but the argument lacks force in this context. First, as was noted above, Congress had no specific intention with respect to cigarettes when it approved the Act; therefore, it is difficult to find significance in Congress' decision not to list them among the substances that were not covered. Second, the list of exclusions is composed chiefly of substances regulated under other statutory schemes; since the labeling of cigarettes was not the province of any other agency in 1960, it seems unwise to draw conclusions from their omission from the list of excluded substances. In sum, then, having considered the language, purpose, and history of the original FHSA, I must conclude that it did not cover cigarettes.

The defendants also argue that violations of the FSHA do not give rise to a private cause of action. I consider this question briefly. There is no doubt that the FHSA provided no explicit civil remedy; the question is whether one ought to be implied from the statute.

■ The legal standard is clear. In evaluating a claim that an implied cause of action exists, the

> focus must be on the intent of Congress when it enacted the statute in question. That intent may in turn be discerned by examining a number of factors, including the legislative history and purposes of the statute, the identity of the class for whose particular benefit the statute was passed, the existence of express statutory remedies adequate to serve the legislative purpose, and the traditional role

of the states in affording the relief claimed.

*Daily Income Fund, Inc. v. Martin Fox,* 464 U.S. 523, 532–33, 104 S.Ct. 831, 837, 78 L.Ed.2d 645 (1984) (citations omitted). *See also Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). Applying these factors, the Second Circuit Court of Appeals has held that the violations of the FHSA do not give rise to a private cause of action. *Riegel Textile Corp. v. Celanese Corp.,* 649 F.2d 894, 899–903 (1981). I am persuaded by the *Riegel* court's analysis. The legislative history is silent on the question whether Congress intended that the Act provide private remedies, and nothing in the language or structure of the Act hints that Congress aimed to create a system of private enforcement. Standing alone, these facts suggest that no private cause of action should be implied, as it is the legislative intent that is the touchstone of *Cort v. Ash* analysis. *Touche Ross & Co. v. Reddington,* 442 U.S. 560, 576, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1976). Consideration of the other factors reinforces the view that no cause of action should be implied. As the *Riegel* court held, the "language of [the Act] contrasts markedly with that of other statutes which the Supreme Court has stated expressly identify the classes Congress intended to benefit." 649 F.2d at 900. The Act provided a full set of remedies, including provisions for administrative rulemaking, P.L. No. 86–613 (1960) § 3; criminal penalties, *id.,* § 5, seizures, *id.,* § 6, and injunctions, *id.,* § 8. These provisions seem adequate to serve the original FHSA's legislative purpose. Finally, state law is the traditional source of rights based on theories of breach of warranty, negligent failure to warn, and products liability; thus, the last factor, like the others, cuts against the creation of a private remedy. Therefore, even if the FHSA as originally enacted did cover cigarettes, the defendants' alleged violations of the Act would not be actionable by the plaintiffs.

Accordingly, Counts 1 through 1–D of the plaintiffs' complaint are dismissed for

failure to state a claim upon which relief can be granted.

SO ORDERED.