Ashleigh Lynn ISGETT, By and Through her mother and next friend, Mary Ellen ISGETT, and Tasha Necol Luke, by and through her mother and next friend, Susan Anne Willis, Plaintiffs,

v.

WAL-MART STORES, INC., Defendant.

Civil Action No. 3:96–CV–325WS.

United States District Court,
S.D. Mississippi,
Jackson Division.

June 30, 1997.

C. Ray Scales, Jr., C. Ray Scales, Jr. & Associates, Jackson, MS, for Plaintiffs.

Edley H. Jones, III, Kirkland & Barfield, Jackson, MS, for Defendant.

## MEMORANDUM OPINION AND ORDER

WINGATE, District Judge.

Before the court is motion of defendant Wal–Mart Stores, Inc., for summary judgment pursuant to Rule 56(b) of the Federal Rules of Civil Procedure.[1] This matter arises out of an accident involving two minors, Ashleigh Lynn Isgett and Tasha Necol Luke, who allegedly were injured when plaintiff Luke slipped on a substance known as "Silly String" sprayed on the shelves and on the floor in defendant's Pearl, Mississippi, store location. In their complaint, plaintiffs claim that by displaying a can of "Silly String" for sale on the bottom shelf in its Pearl, Mississippi, store, defendant violated Title 15 U.S.C. § 1261, *et seq.*, commonly known as the Federal Hazardous Substance Act (hereinafter FHSA), the regulations promulgated thereto, Title 16 C.F.R. § 1500.1, *et seq.*, and that said violation constituting negligence per se proximately caused the accident at issue. For the injuries allegedly sustained, plaintiffs seek compensatory damages in the amount of $1,000,000.00 and punitive damages in the amount of $5,000,000.00. Persuaded that the applicable law as applied to the undisputed material facts does not support plaintiffs' claim, this court is persuaded to grant the summary judgment motion for the reasons which follow.

## I. PARTIES AND JURISDICTION

Plaintiffs Ashleigh Lynn Isgett and Tasha Necol Luke, both minor resident citizens of Rankin County, Mississippi, bring this action by and through their mothers and next friends, Mary Ellen Isgett and Susan Anne Willis, respectively, who also are resident citizens of Rankin County, Mississippi.[2]

---

**1.** Rule 56(a) of the Federal Rules of Civil Procedure provides:

A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof.

**2.** Rule 17 of the Federal Rules of Civil Procedure provides in pertinent part:

Whenever an infant or incompetent person has a representative, such as a general guardian, committee, conservator, or other like fiduciary, the representative may sue or defend on behalf of the infant or incompetent person.

Defendant Wal–Mart Stores, Inc., is a non-resident corporation domiciled in the State of Delaware, but licensed to do business in the State of Mississippi.

This court has jurisdiction of this matter pursuant to Title 28 U.S.C. § 1331 [3] (federal question) and Title 28 U.S.C. § 1332 [4] (diversity of citizenship).

## II. PERTINENT FACTS

Sometime prior to March 27, 1993, defendant displayed a canned novelty item for sale to the general public labeled "Extra Thick Super String," commonly referred to as "Silly String." On March 27, 1993, at approximately 5:30 p.m., plaintiffs, with their mothers and two other children entered defendant's Pearl, Mississippi, store to do some shopping. Plaintiff Ashleigh Isgett was placed in the child seat of a shopping cart which was being pushed by plaintiff Tasha Luke. At the time, Ashleigh was six years old and Tasha was thirteen years old. Eventually, the group split up; the children went to the toy department and the adults went to another part of the store.

According to plaintiffs, Ashleigh and Luke and the other children went through the aisle of the toy department looking at the toys on the shelf. Plaintiffs say they observed in the toy department no people, such as Wal–Mart employees or other adults, other than three boys engaged in horse play by the bicycle rack, which, according to Tasha, was directly across from the aisle where the Silly String was displayed on the bottom shelf. As Tasha pushed the shopping cart down one aisle in particular, she went to turn a corner and she stepped in what she describes as a "puddle of water." Tasha says she slipped in the puddle and began to fall. To break her fall, Tasha says she grabbed the shopping cart in which Ashleigh sat, causing the shopping cart to shoot down the aisle at a high rate of speed. The shopping cart hit the center aisle, flipped over, threw Ashleigh from the child seat and landed on top of her leg, breaking it. Meanwhile, Tasha had landed on her back, allegedly suffering bruises and pulled muscles.

After slipping, Tasha claims that since the back of her shirt was soaking wet, she looked around to determine the source of the wetness. According to Tasha, she saw some Silly String sprayed on a shelf near where she had slipped and that the Silly String had dripped to the floor. She says she also noticed cans of Silly String, not in their usual places, sitting on top of some toys. Ashleigh's testimony purportedly corroborates Tasha's assertions, since Ashleigh claims that while lying on the floor, she also saw an open can of Silly String under the display shelves.

## III. SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure,[5] summary judgment is appropriate if the record discloses "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Evans v. City of Marlin. Texas,* 986 F.2d 104 (5th Cir.1993). "If reasonable minds might differ on the resolution of any material fact or even the inferences arising from undisputed facts, summary judgment must be denied." *Anthony v. Petroleum Helicopters, Inc.,* 693 F.2d 495, 496 (5th Cir.1982). On the other hand, summary judgment is mandated in any case where either a party fails to establish the existence of an element essential to the case and on which that party

**3.** Title 28 U.S.C. § 1331 states: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

**4.** Title 28 U.S.C. § 1332 provides in pertinent part:

(a) The district court shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,-000.00, exclusive of interest of costs, and is between—

(1) citizens of different States; ...

**5.** Rule 56(c) provides in pertinent part:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.

has the burden of proof, *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or if the evidence favoring the non-moving party is insufficient for a jury to enter a verdict in the non-moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). So, then, the court's function at the summary judgment stage is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Id.*

In reviewing the propriety of summary judgment, this court must look to the pleadings, depositions, admissions and answers to interrogatories, as well as affidavits to determine whether a genuine issue of material fact exists. *Evans,* 986 F.2d at 107. When the moving party has carried the Rule 56(c) burden, that is, proved that no genuine issue of material fact exists, the opposing party must present more than a metaphysical doubt about the material facts in order to preclude the grant of summary judgment. *Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, the non-movant must set forth specific facts showing that there is a genuine issue for trial. *Celotex Corporation v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where the non-moving party fails to establish the existence of an element essential to the case on which said party has the burden of proof, this court is required to enter summary judgment in the moving party's favor. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250–51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). However, where there is reasonable doubt as to whether a genuine issue of material fact exists, the court must resolve all reasonable doubts against the movant. *Byrd v. Roadway Express, Inc.,* 687 F.2d 85, 87 (5th Cir. 1982).

## IV. *ANALYSIS*

Plaintiffs bring this action pursuant to the Federal Hazardous Substances Act found at Title 15 U.S.C. § 1261, *et seq.,* (hereinafter FHSA), regulations promulgated thereto, Title 16 C.F.R. § 1500.1, and under a theory of negligence per se.

According to plaintiffs, Silly String is contained in a small metal pressurized can and is propelled from the can by aerosol propellants. Although intended as a toy for use by children, say plaintiffs, the product bears the following instructions and warnings on its label: [6]

> PLEASE SHAKE WELL BEFORE USING. Directions: For best results, shake can vigorously both before and during use. To avoid sticking, spray SUPER STRING at a distance of at least 10 ft.

> WARNING: Please use only as directed. Although nontoxic do not ingest product. Do not spray toward face or in eyes. Do not spray near fire o[r] flames. Contents under pressure. Do not puncture or incinerate container. Do not expose to heat or store at a temperature above 120 [degrees] F. KEEP OUT OF REACH OF CHILDREN, EXCEPT UNDER ADULT SUPERVISION.

■ Plaintiffs contend that if the Silly String container is not shaken well, as directed, the clear and extremely slippery aerosol propellant comes out of the can without the string. Plaintiffs then charge that despite the clear directives of the warning label to keep the merchandise out of the reach of children, defendant displayed cans of Silly String on the bottom shelf in its Pearl, Mississippi, store, making it easily accessible to children. As a result, plaintiffs claim that although they did not witness it, the three unidentified boys they saw engaged in horseplay near the Silly String or some other unknown child or children must have sprayed the Silly String on the shelf, which inevitably caused Tasha's slip and fall and the subsequent injuries of both plaintiffs. Plaintiffs argue that defendant, by displaying the Silly String on the bottom shelf, failed to heed the directives of the warning label to keep out of the reach of children. Thus, reason plaintiffs, defendant violated the FHSA and acted

---

**6.** The below-cited words of the can's label, namely "PLEASE SHAKE WELL BEFORE USING," "DIRECTIONS" and "WARNING," are all printed in red letters.

in a manner that can only be characterized as negligence per se.[7]

The court addresses each theory of liability separately in the paragraphs which follow.

## A. THE FEDERAL HAZARDOUS SUBSTANCES LABELING ACT AND RELATED REGULATIONS

The FHSA, one of many safety-oriented statutes consolidated into the Consumer Product Safety Act (hereinafter CPSA), Title 15 U.S.C. §§ 2051, *et seq.*, provides a statutory scheme for the regulation and labeling of substances deemed to be hazardous by the Consumer Product Safety Commission (hereinafter CPSC). The FHSA prohibits the following: introducing a misbranded or banned hazardous substance into commerce; offering or mutilating a label on a hazardous substance; receiving misbranded or banned hazardous substances in interstate commerce; and certain other acts which interfere with the enforcement of the FHSA. *See* Title 15 U.S.C. § 1263.

Under the provisions of the FHSA, the CPSC is empowered to regulate or ban certain hazardous substances. Specifically, the CPSC has the power to: (1) declare a product to be a hazardous substance, Title 15 U.S.C. § 1262(a)(1); (2) require labeling in addition to that required by the statutes, Title 15 U.S.C. § 1262(b); (3) exempt substances from the full requirements of the FHSA, Title 15 U.S.C. § 1262(c); and (4) ban certain hazardous substances altogether, Title 15 U.S.C. § 1261(q)(1).

Under the FHSA, the term "hazardous substances" includes substances which are toxic, corrosive, irritants, strong sensitizers, flammable, combustible, or which generate pressure through decomposition, heat or other means, if such substances may cause substantial personal injury or illness during or as a proximate result of customary or foreseeable handling or use of the substance including reasonable foreseeable ingestion by children. *See* Title 15 U.S.C. § 1261(f)(1)(A). Pertinent to the instant case, a "hazardous substance" also includes a toy or other article intended for use by children which has been determined to present an electrical, mechanical or thermal hazard. *See* Title 15 U.S.C. § 1261(f)(1)(D).

The term "banned hazardous substance" means, *inter alia*, "any toy or other article intended for use by children, which is a hazardous substance or which bears or contains a hazardous substance in such manner as to be susceptible of access by a child to whom such toy or other article is entrusted." *See* Title 15 U.S.C. § 1261(q)(1). However, a game containing, as the sole hazardous component, a self-pressurized container of soap solution or similar foam-generating mixture is not a banned hazardous substance, provided that the foam-generating component has no hazards other than being in a self-pressurized container and that the product bears a label giving adequate directions and warnings for safe use. *See* Title 16 C.F.R. § 1500.85(a)(7).

Violators of the FHSA provisions are subject to either or both criminal and civil penalties. *See* Title 15 U.S.C. § 1264(a) and (c). Criminal penalties include a fine not to exceed $500, imprisonment for 90 days, or both. Furthermore, when a criminal violation of the FHSA has been determined to have occurred, the Commission is empowered to report said violation to the United States Attorney for institution of a criminal proceeding in the United States District Courts, but only after the person against whom such proceeding is contemplated is given the appropriate notice and an opportunity to present his views, either orally or in writing, with regard to the contemplated hearing. *See* Title 15 U.S.C. § 1266. Civil penalties include a fine of not more than $5,000.00 for each separate offense, and less

---

7. Mississippi's "slip and fall" cases require a plaintiff to prove "notice" before a proprietor may be subjected to liability. A plaintiff satisfies this burden by proving that (1) the proprietor had actual knowledge of the dangerous condition and failed to warn plaintiff or (2) that the dangerous condition existed for a sufficient amount of time as to impute constructive knowledge to the proprietor, in that the proprietor should have known of the dangerous condition. *See Hardy By and Through Hardy v. K Mart Corp.*, 669 So.2d 34, 38 (Miss.1996). Unable to prove either of these circumstances, plaintiffs have not asserted a simple claim of negligence, rather plaintiffs rely upon the above causes of action which are not dependent on this "notice" requirement.

than $1,250,000.00 for any related series of violations. *See* Title 15 U.S.C. § 1264(c).

Defendant correctly points out that the FHSA, upon which plaintiffs advance their theory of relief does not expressly create a private cause of action. However, the absence of an express right is not fatal to plaintiffs' case if they can establish that the FHSA endows them with an implied right of action. *Rogers v. Frito–Lay, Inc.* 611 F.2d 1074, 1085 (5th Cir.1980).

While there is no Fifth Circuit law on this specific issue, courts in other jurisdictions have determined that a private cause action is not implied under the FHSA because a private plaintiff cannot satisfy the test established in *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975). *Christenson v. St. Mary's Hosp.,* 835 F.Supp. 498, 501 (D.Minn.1993); *Palmer v. Liggett Group, Inc.,* 635 F.Supp. 392, 397 (D.Mass.1984), *rev'd on other grounds,* 825 F.2d 620 (1st Cir.1987); *Sparks v. Metalcraft, Inc.,* 408 N.W.2d 347 (Iowa, 1987). The most thorough analysis on this issue can be found in *Riegel Textile Corp. v. Celanese Corp.,* 649 F.2d 894, 899–902 (2d Cir.1981).

In *Cort v. Ash* the United States Supreme Court set out the test lower courts are to employ in determining whether a private remedy is implicit in a statute:

> In determining whether a private remedy is implicit in a statute not expressly providing one, several factors are relevant. First, is the plaintiff one of the class for whose *especial* benefit the statute was enacted,—that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such remedy or to deny one? Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087, 45 L.Ed.2d 26 (1975).

The first inquiry under the *Cort v. Ash* test—for whose especial benefit is the statute enacted—is answerable by looking to the language of the statute itself. *Riegel Textile Corp. v. Celanese Corp.,* 649 F.2d 894, 900 (2d Cir.1981) (citing *Cannon v. University of Chicago,* 441 U.S. 677, 689, 99 S.Ct. 1946, 1953, 60 L.Ed.2d 560 (1979)), and *Transamerica Mortgage Advisors v. Lewis,* 444 U.S. 11, 16, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979). Pertinent sections of the FHSA "evince an intent to benefit the buyers of household products, and especially children for whom toys are purchased." *Riegel Textile Corp.,* 649 F.2d at 900. Clearly, then, plaintiffs, as children, fall squarely within the class the FHSA seeks to protect. Accordingly, the first *Cort* inquiry weighs in favor of implying a private right of action under the FHSA.

The second and most important *Cort* inquiry—whether there is any indication of legislative intent to create a private remedy or deny one—requires an examination of the legislative history of the FHSA. *Riegel Textile Corp.,* 649 F.2d at 900 (citing *Cannon,* 441 U.S. at 694, 99 S.Ct. at 1956); *Touche Ross & Co. v. Redington,* 442 U.S. 560, 575, 99 S.Ct. 2479, 2489, 61 L.Ed.2d 82 (1979) (stating that the second *Cort* inquiry is the most important); *Rivers v. Rosenthal & Co.,* 634 F.2d 774, 781 (5th Cir.1980) ("[T]he dispositive inquiry in evaluating claims upon implied rights of action is the divining of whether Congress intended such a cause of action to be born, the second *Cort* criteria.").

The legislative history of the FHSA indicates that the underlying purpose of the FHSA was to "achieve nationwide uniformity in the regulation of certain hazardous products." *Riegel Textile Corp.,* 649 F.2d at 901. To this end, Congress largely patterned the prohibitions of the FHSA after the corresponding section of the Federal Food, Drug and Cosmetic Act, H.R.Rep. No. 1861, 86th Cong., 2d Sess. (1960), *reprinted* in [1960] U.S.Code Cong. & Admin.News 2833, 2840. Consequently, as originally enacted, the FHSA "focused on the labeling of certain products, with enforcement solely through agency action, as in the Food, Drug and Cosmetic Act." *Riegel Textile Corp.* 649 F.2d

at 901. "To fulfill this purpose, Congress created the CPSC as an independent regulatory agency, giving it the primary responsibility for enforcement of the statutes, and provided limited private remedies for situations in which the CPSC fails to act upon or denies a petition, or when a rule or order of the CPSC is violated." *Id.* While in later years, the FHSA expanded the powers of the CPSC to allow a direct ban on certain products where a cautionary label was considered insufficient to protect consumers, *id.*, there is no indication of a Congressional intent to remove enforcement power from the CPSA. Consequently, this inquiry weighs heavily against plaintiffs.

Determination of the third *Cort* inquiry—whether a private cause of action is consistent with the underlying purposes of the legislative scheme—requires consideration of legislative intent and the enforcement tools to accomplish that intent. In so doing, this court must refrain from resorting to its own notion of sound policy or its "concept of what best suits the public weal." *Rogers v. Frito–Lay, Inc.,* 611 F.2d 1074, 1085 (5th Cir.), *cert. denied,* 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980). With respect to this third *Cort* inquiry, this court is persuaded by the court's analysis in *Riegel:*

> The Federal Hazardous Substances Act and the Consumer Product Safety Act contain a comprehensive set of administrative and judicial remedies. Section 1264 provides for criminal penalties for violation of the FHSA. Section 1265 provides for seizure action, and section 1267 provides for injunctive proceedings. Section 1268 provides that all criminal, seizure and injunctive actions be brought "by and in the name of the United States." Section 2059 [of the CPSA] provides for petitions to the CPSC for a product safety rule, and for a civil action if the CPSC fails to act on or denies the petition. Section 2069 grants the CPSC the authority to proceed administratively for the purpose of assessing civil penalties. (Citation omitted). Section 2070 provides for criminal penalties for violation of the CPSA, and section 2071 provides for injunctive enforcement and seizure actions under the CPSA. Section 2072 provides for private suits for damages due to any violation of any CPSC rule or order. Section 2073 provides for private suits to enforce any CPSC rule or order by injunction.

> The Acts give the CPSC a broad range of enforcement powers to implement the statutory purposes. Implicit in this enforcement scheme is the need of the CPSC to evaluate the exercise of its enforcement power in light of a broad range of policy considerations, particularly the development of a coordinated regulatory program. Because litigants in pursuit of a private remedy are unconstrained by institutional policies of uniformity, they could, by instituting multiple lawsuits, undermine the Acts' goal of a coordinated regulatory program. Private litigation could deprive the CPSC of an opportunity to build upon the foundation provided by the FHSA and the CPSA in establishing a sound and strong federal regulatory policy governing hazardous substances. Specifically, such litigation would diminish the discretion of the CPSC to decide whether a substance can be made safe through cautionary labeling or must be banned from the marketplace.

*Riegel Textile Corp.,* 649 F.2d at 901–902. In light of the *Riegel Textile Corporation* analysis, this court is persuaded that the third *Cort* inquiry also weighs against plaintiffs.

With regard to the final *Cort* inquiry—whether the cause of action is one traditionally relegated to state law—the court considers the theories upon which this lawsuit is based. *Palmer v. Liggett Group, Inc.,* 635 F.Supp. 392, 397 (D.Mass.1984), *rev'd on other grounds,* 825 F.2d 620 (1st Cir.1987); *Riegel Textile Corp. v. Celanese Corp.,* 649 F.2d 894, 902 (1981). Plaintiffs' claims are based upon the theory of negligence. Claims of negligence are traditionally a concern of state law and here, at least, the relegation of plaintiffs to state law remedies will not frustrate the purpose of the FHSA or the national interest. *See J.I. Case v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964) (private cause of actions implied when relegating litigants to a state remedy would frustrate the purpose of statute). So then, the final *Cort* inquiry weighs against plaintiffs, too.

In sum, except for the first *Cort* inquiry, all of the other *Cort* factors preponderate against plaintiffs' theory that the FHSA provides a private cause of action. As such, defendant is entitled to a summary judgment on this ground alone. *Olsen v. Shell Oil Co.,* 561 F.2d 1178, 1188 (5th Cir.1977).

Furthermore, even if, for the sake of argument, there is an implied right to a private cause of action under FHSA, plaintiffs' claims would nevertheless fall victim to defendant's summary judgment motion on other grounds.

■ In support of their claim that defendant violated the FHSA, plaintiffs rely on the premise that another child or other children, namely one or all of the boys observed by Tasha horsing around by the bicycle rack, obtained cans of Silly String and sprayed them on the floor where Tasha slipped and fell. However, plaintiffs have failed to support this bald assertion with any proof. Neither plaintiff claims to have seen the boys spray the Silly String. Further, plaintiffs have presented no evidence whatsoever that anyone else actually saw either those boys or any other child spraying the Silly String.

In the Fifth Circuit, the law is clear that mere conclusory allegations and speculation by non-movants, with nothing more, will not defeat a motion for summary judgment. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992) ("mere conclusory allegations are not competent summary judgment evidence, and they are therefore insufficient to defeat or support a motion for summary judgment"); *Galindo v. Precision American Corp.,* 754 F.2d 1212, 1216 (5th Cir.1985); *United States v. An Article of Drug,* 725 F.2d 976, 984–85 (5th Cir.1984); *Grimes v. Texas Dept. of Mental Health,* 102 F.3d 137, 140 (5th Cir.1996) (in response to a summary judgment motion, it is incumbent upon the non-moving party to present evidence of his or her case and not just conjecture and speculation); *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir.1996) ("[C]onclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the non-movant's burden"); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.1994) (unsubstantiated assertions are not

competent summary judgment evidence); *Krim v. BancTexas Group, Inc.,* 989 F.2d 1435, 1449 (5th Cir.1993) (if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation, summary judgment may be appropriate).

Additionally, having carefully studied the FHSA, its purpose and its provisions, this court finds that Silly String does not appear to be a hazardous substance within the definition set forth in the FHSA. It is undisputed that the contents of a can of Silly String are non-toxic and while it is conceivable that a novelty product such as Silly String might fall within the related definition of a hazardous substance because it comes in a pressurized can, it could only present a hazard if the pressurized can is punctured. This, of course, is not alleged as a fact in the instant case.

Finally, even if Silly String is a hazardous substance as defined by the FHSA, and even if the FHSA allowed a private cause of action, plaintiffs' claim would fail because defendant did not engage in any acts that are prohibited by the FHSA. Plaintiffs' claim that by displaying the Silly String on a bottom shelf, making it accessible to children despite the warning label directing that the product be kept out of the reach of children unless under adult supervision, defendant is in violation of the Act. Nothing in the FHSA or the regulations promulgated thereto prohibit a merchant from displaying a can of Silly String where it can be reached by children. The warning label is clearly directed to the consumer of the goods and not to the retailer. Plaintiffs have presented no authority to show otherwise.

## B. NEGLIGENCE PER SE CLAIM

Plaintiffs' complaint also avers a claim of negligence per se. This claim, too, is based upon the contention that Wal–Mart violated the FHSA and supporting regulations. As already established, plaintiffs have not presented any proof that Wal–Mart violated any provision of the FHSA. This holding alone is sufficient reason for this court to dismiss plaintiffs' negligence per se claims; but,

**430**

there are additional reasons why plaintiffs cannot pursue a negligence per se claim.

 Under Mississippi law, a violation of a safety statute constitutes negligence per se where: (1) the plaintiff is a member of the class sought to be protected by the statute; and (2) the resultant harm is of the type sought to be prevented by the passage of the statute. *Haver v. Hinson*, 385 So.2d 605, 608 (Miss.1980).

 In applying these criteria to the instant case, this court recognizes that the plaintiffs are members of the class the FHSA seeks to protect. As previously stated, the legislative history of the FHSA "evince[s] an intent to benefit the buyers of household products, and especially children for whom toys are purchased." *Riegel Textile Corp.*, 649 F.2d at 900. However, relative to the second factor of *Haver v. Hinson*, the resultant harm here suffered by plaintiffs is not the type of harm the FHSA focused on preventing. This case involves injuries resulting from a slip and fall accident. The FHSA was not enacted to prevent slip and fall accidents. Rather, the FHSA sought to prevent harm from injuries and deaths resulting from poisonings pursuant to careless handling of chemicals used in the household. H.R.Rep. No. 1861, 86th Cong., 2d Sess. (1960), *reprinted* in [1960] U.S.Code Cong. & Admin.News 2833, 2834. The facts of this case, as alleged by plaintiffs, do not fall within the scope of the FHSA. Hence, plaintiffs' negligence per se claim is without merit under Mississippi law.

 Additionally, even if plaintiffs could satisfy the requirements of *Haver v. Hinson*, 385 So.2d 605, 608 (Miss.1980), plaintiffs' negligence per se claim would still fail. Since the FHSA has been interpreted by this court to provide no private cause of action, an alleged violation of said statute will not provide a basis for a claim of negligence per se. *Miller v. E.I. DuPont de Nemours and Company*, 880 F.Supp. 474, 480 (S.D.Miss. 1994) ("[S]ince Congress did not intend to create a private right of action under [the Federal Insecticide, Fungicide and Rodenticide Act] FIFRA, then any alleged violation of that statute by (private) defendant cannot provide a basis for a negligence per se claim.").

Therefore, for all of the foregoing reasons, this court is persuaded to enter summary judgment in favor of the defendant and to dismiss all of plaintiffs' claims with prejudice. Defendant is entitled to costs. The court will enter a separate judgment pursuant to the local rules.