[629 NYS2d 570]

MILDRED I. WALLACE et al., Individually and as Parents and Natural Guardians of JOHN M. WALLACE, III, and Others, Infants, Respondents, v PARKS CORPORATION et al., Appellants, et al., Defendants.

Fourth Department, June 9, 1995

### APPEARANCES OF COUNSEL

*Block & Colucci, P. C.,* Buffalo *(Anthony J. Colucci, III,* and *John J. Marchese* of counsel), for Parks Corporation and another, appellants.

*Petrone & Petrone,* Utica *(James Godemann* of counsel), for respondents.

### OPINION OF THE COURT

BOEHM, J.

Plaintiff Mildred I. Wallace was injured when camp stove fuel manufactured by defendant Parks Corporation (Parks) and sold by defendant Fay's Incorporated (Fay's) (collectively defendants) ignited in plaintiffs' kitchen, causing a fire that spread quickly and surrounded her. Defendants assert that plaintiffs' causes of action alleging defective design of the camp fuel because of its dangerously low flash point and defective design of the container, and for breach of express and implied warranties, are preempted by the Federal Haz-

ardous Substance Act (FHSA; 15 USC § 1261 *et seq.).* We disagree.

## I

The accident occurred when Mrs. Wallace was refilling a Coleman camp stove with the camp stove fuel. As Mrs. Wallace was refilling the camp stove on her kitchen stove, using a funnel to pour the fuel from the container into the camp stove, there was a sudden flash and the fuel ignited. When she realized that the can of fuel was in flames, Mrs. Wallace dropped the can to the floor. The flames quickly spread, trapping Mrs. Wallace in a small area in her kitchen. She attempted to extinguish the fire with a fire extinguisher, but the extinguisher did not work.

Mrs. Wallace's husband and the couple's two sons and daughter were in the next room when the fire erupted, and her husband and two sons ran into the dining room, where they saw a wall of flames, behind which they heard Mrs. Wallace screaming. The daughter, Jennilyn, was also in the living room, and ran out the front door when she heard the screams. She did not actually see the fire, although she saw her mother shortly afterward. Mr. Wallace and the two boys, John, III, and Jeffrey, were unable to reach Mrs. Wallace or extinguish the flames. Mrs. Wallace finally escaped through the cellar stairs to the outside via the cellar door.

Plaintiffs commenced this action, asserting claims arising out of (1) the negligent design and manufacture of the camp fuel and container by Parks, and the selling of an unreasonably dangerous product by Fay's; (2) strict products liability on the basis that the container and/or the camp fuel was improperly designed, fabricated, assembled, tested, inspected, marketed, sold, supplied and/or distributed by Parks and Fay's; and (3) breach of the implied warranty of merchantability and breach of express warranty. Mr. Wallace, individually and on behalf of the three children, also brought a cause of action for negligent infliction of emotional distress.

After issue was joined, defendants moved for summary judgment, arguing that the facts preclude a design defect claim; that the FHSA preempts any claim based upon inadequate warnings; and that the claims for negligent infliction of emotional distress are insufficient as a matter of law.

In response to defendants' motion, plaintiffs cross-moved for leave to serve a second amended complaint. In support of

their motion, plaintiffs submitted an affidavit from Dr. C. J. Abraham, an expert in the fields of products liability and safety engineering. It was Dr. Abraham's opinion that the fire resulted from vapors from the camp fuel being ignited by the pilot lights. In his opinion, the injuries caused by the fire could have been significantly minimized or avoided had the container been equipped with a spring trigger closing mechanism and a flame arrester. According to Dr. Abraham, the fuel could not be safely poured using a funnel as directed, and should not be poured indoors. He stated that the directions and warnings on the container were inadequate, and that the container was misbranded and not in compliance with the minimum standards required by the FHSA.

Supreme Court granted in part defendants' motion for summary judgment and dismissed plaintiffs' claims based upon defendants' failure to warn and denied defendants' motion for summary judgment in all other respects. The court also granted plaintiffs' cross motion for leave to serve a second amended complaint, and denied defendants' motion for a protective order prohibiting the deposition of the technical director of Parks.

## II

■ Federal courts almost without exception now hold that the Federal statutes creating labeling requirements, such as those contained in the FHSA, preempt common-law failure to warn and inadequate labeling claims *(see, Moss v Parks Corp., 985 F2d 736, cert denied — US —, 113 S Ct 2999; DeHaan v Whink Prods. Co.,* 1994 WL 24322 [ND Ill, Jan. 26, 1994, Holderman, J.]; *Lee v Boyle-Midway Household Prods.,* 792 F Supp 1001; *see also, Papas v Upjohn Co.,* 985 F2d 516, *cert denied sub nom. Papas v Zoecon Corp.,* — US —, 114 S Ct 300; *Higgins v Monsanto Co.,* 862 F Supp 751). Both the Second and Third Departments have reached the same result *(see, Warner v American Fluoride Corp.,* 204 AD2d 1; *June v Laris,* 205 AD2d 166).

While *Papas v Upjohn Co. (supra)* specifically dealt with the Federal Insecticide, Fungicide, and Rodenticide Act (FIFRA), "[t]he preemption issues arising under FHSA are identical to those arising under FIFRA" *(Chemical Specialties Mfrs. Assn. v Allenby,* 958 F2d 941, 945; *see also, Moss v Parks Corp., supra).* In *Papas,* the 11th Circuit, upon remittal from the United States Supreme Court, was confronted with the issue

whether, in light of *Cipollone v Liggett Group* (505 US 504), a plaintiff's common-law tort claims based on inadequate labeling were expressly preempted by FIFRA. FIFRA provides that a State may not impose "any requirements for labeling or packaging in addition to or different from those required" by FIFRA (7 USC § 136v [b]). The *Papas* court concluded that common-law tort actions, especially those arising out of implied warranties, constitute a form of "requirements" within the meaning of FIFRA, and are therefore preempted "[t]o the extent that state law actions for damages depend upon a showing that a * * * manufacturer's 'labeling or packaging' failed to meet a standard 'in addition to or different from' FIFRA requirements" *(Papas v Upjohn Co., supra,* at 518). In *Cipollone,* the Supreme Court held that the Federal Cigarette Labeling and Advertising Act of 1965, as amended in 1969, while preempting State failure to warn claims, did not preempt all common-law claims, such as express warranty and fraudulent misrepresentation (505 US, *supra,* at 524).

The prevailing rule today is that a plaintiff's claims are preempted only "to the extent that [they] require a showing that defendants' labeling and packaging should have included additional, different, or alternatively stated warnings from those required [in this case] under FIFRA" *(Arkansas-Platte & Gulf Partnership v Van Waters & Rogers,* 981 F2d 1177, 1179). While claims resting on failure to warn or communicate labeling information are preempted, claims for negligent testing, manufacturing and formulating are not *(see, Worm v American Cyanamid Co.,* 5 F3d 744, 747).

Thus, nonlabeling claims for breach of implied warranty of merchantability *(Wright v Dow Chem.,* 845 F Supp 503), for breach of implied warranty of fitness for a particular purpose *(Casper v Du Pont de Nemours & Co.,* 806 F Supp 903), or brought under State common-law strict liability *(Higgins v Monsanto Co., supra; Fisher v Chevron Chem. Co.,* 716 F Supp 1283) are not preempted. Although the cases cited deal with labeling under FIFRA, the same principle applies under FHSA *(see, DeHaan v Whink Prods. Co., supra).*

Since the Supreme Court's *Cipollone* decision, courts have essentially used a two-prong analysis to determine whether State claims are preempted by FIFRA and similar Federal labeling requirement statutes, including FHSA. That analysis requires an application of the statutory preemption criteria, (1) whether a plaintiff's claim is based upon a requirement

imposed by the State and, (2) whether the claim relates to labeling or packaging *(Higgins v Monsanto Co., supra,* at 760). As already noted, courts applying that analysis have almost uniformly held that failure to warn claims, whether couched in terms of products liability or breach of implied warranty, are preempted. Breach of express warranty claims, however, are not preempted, because such liability arises not from a requirement imposed by State law, but from a promise voluntarily made by the manufacturer *(Cipollone v Liggett Group,* 505 US, *supra,* at 525, 112 S Ct, *supra,* at 2622). Thus, the court properly dismissed plaintiffs' failure to warn claims, and properly denied defendants' motion with respect to plaintiffs' express warranty claims.

FHSA does not preempt plaintiffs' implied warranty claims *(see, Wright v Dow Chem., supra; Casper v Du Pont de Nemours & Co., supra).* Although such claims are based upon requirements imposed by State law, thus satisfying the first prong of the preemption analysis, not all of plaintiffs' claims relate to labeling and, thus, they do not satisfy the second prong. Under UCC 2-314 (2) (e) and (f), "[g]oods to be merchantable must be at least such as * * * are adequately contained, packaged, and labeled as the agreement may require; and * * * conform to the promises or affirmations of fact made on the container or label if any". Plaintiffs' claims that relate to the "promises or affirmations of fact made on the container or label" (i.e., adequate warning claims) are preempted. However, plaintiffs' amended and proposed second amended complaints are not confined only to such claims.

Plaintiffs also assert claims based upon the defective design of the container, and the manufacture of a fuel with a dangerously low flash point. Such defective design claims are independent of the product's labeling and, thus, are not preempted *(see, Higgins v Monsanto Co., supra; Bingham v Terminix Intl. Co.,* 850 F Supp 516). It should also be noted that, since the elimination of privity to support an action for breach of implied warranty (UCC 2-318), there is little, if any, difference at present between an action for strict products liability and one for breach of implied warranty *(see, Heller v U.S. Suzuki Motor Corp.,* 64 NY2d 407). Therefore, to the extent that plaintiffs' implied warranty claims relate to the inadequate design of the container and the dangerously low flash point of the camp stove fuel, rather than to inadequate labeling or warnings, those claims survive. In arriving at this determination, we also take heed of the rule of interpretation that

preemption clauses in a statute are to be narrowly construed and that matters beyond their scope are not preempted *(Cipollone v Liggett Group,* 505 US, *supra,* at 524).

## III

■ Regarding defendants' motion for summary judgment on the defective design claims, plaintiffs' amended complaint primarily focuses on designs that would have prevented spilling the fuel while filling the camp stove. As defendants correctly point out, there is no evidence that any fuel was, in fact, spilled during the transfer to the camp stove; Mrs. Wallace testified in her deposition that she, in fact, did not spill any fuel at that point. However, it is worth repeating that plaintiffs' amended complaint also contains allegations that the fuel was improperly designed in that it had a dangerously low flash point. Defendants have submitted no proof to rebut those allegations. In addition, the proposed second amended complaint of plaintiffs more particularly sets forth the basis of their defective design claim, and includes allegations that the container should have employed a spring-loaded trigger closing mechanism or a flame arrester to prevent the escape of excess vapors and the spillage of fuel after Mrs. Wallace dropped the container.

Based on those new allegations, the court properly denied defendants' motion for summary judgment dismissing plaintiffs' defective design claims. Plaintiffs submitted an expert's affidavit expressing the opinion that the fire started when excess vapors were ignited by the pilot light on the stove. Defendants submitted no proof that the fuel and container were properly designed and plaintiffs' expert expressed the opinion that they were not properly designed. Because defendants failed to make the necessary showing that they are entitled to summary judgment, their motion was properly denied *(see, Winegrad v New York Univ. Med. Ctr.,* 64 NY2d 851, 853; *Larkin Trucking Co. v Lisbon Tire Mart,* 185 AD2d 614).

## IV

■ Plaintiffs' proposed second amended complaint alleges that the camp stove fuel is a " 'misbranded hazardous substance' " as that term is defined by the FHSA, "in that the label did not contain adequate precautionary measures de-

scribing the action to be followed or avoided, and/or adequate instructions for handling and storage of packages which require special care in handling or storage" in violation of the Act. Defendants argue that plaintiffs' claim is meritless, citing *Moss v Parks Corp.* (985 F2d 736, *supra),* which held that warnings similar to the ones employed in this case satisfied the requirements of the FHSA.

The FHSA defines a "misbranded hazardous substance", in relevant part, as

"a hazardous substance * * * intended, or packaged in a form suitable, for use in the household or by children, if the packaging or labeling of such substance is in violation of an applicable regulation issued pursuant to section 3 or 4 of the Poison Prevention Packaging Act of 1970 [15 USC §§ 1472 or 1473] [concerning packaging for children] or if such substance, except as otherwise provided by or pursuant to section 3 [15 USC § 1262] [concerning the regulations of the Consumer Product Safety Commission], fails to bear a label—

"(1) which states conspicuously * * * (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Secretary [Commission] pursuant to section 3 [15 USC § 1262] * * * [and] (I) instructions for handling and storage of packages which require special care in handling or storage" (15 USC § 1261 [p] [1] [F], [I]). "The introduction or delivery for introduction into interstate commerce of any misbranded hazardous substance" is prohibited (15 USC § 1263 [a]).

Federal courts that have considered the issue have concluded that the FHSA provides no Federal private right of action *(see, Riegel Textile Corp. v Celanese Corp.,* 649 F2d 894, 899-902; *Christenson v St. Mary's Hosp.,* 835 F Supp 498; *Palmer v Liggett Group,* 635 F Supp 392, 397). However, because FHSA preemption only precludes the imposition of State requirements that are not the same as the Federal requirements (Federal Hazardous Substances Act § 17 [now § 18] [b] [1] [A] [Pub L 89-756 § 4, 80 Stat 1305, as amended], reprinted at 15 USC § 1261, note), some Federal courts have held that a State claim in negligence may be brought, premised upon a violation of the Federal standard. Such a claim is valid, "so long as a plaintiff charges a manufacturer with violations of FHSA-mandated labeling requirements and does not seek more stringent labeling requirements" *(Moss v Parks Corp., supra,* at 740-741; *see also, Worm v American Cyanamid*

*Co.,* 970 F2d 1301, 1308 [discussing the validity of such a claim under FIFRA]; *DeHaan v Whink Prods. Co.,* 1994 WL 24322, *supra; Jenkins v Day & Co.,* 69 Ohio St 3d 541, 549, 634 NE2d 998). While the court in *Moss* ultimately held that plaintiff's claim was insufficient because defendant had, in fact, complied with FHSA, that case clearly supports the right to bring a suit in negligence under State law based upon a violation of FHSA.

Other Federal courts, however, have held that permitting State actions premised upon violations of FHSA or FIFRA would be inconsistent with the conclusion that those statutes do not provide a private right of action under Federal law *(see, Miller v Du Pont de Nemours & Co.,* 880 F Supp 474; *Rodriguez v American Cyanamid Co.,* 858 F Supp 127, 129-131).

Under the circumstances, we are free to chart our own course. "[W]hen, as here, there is neither a decision of the Supreme Court nor uniformity in the decisions of the lower Federal courts, a State court required to interpret a Federal statute is not bound to follow the decision of the Federal courts or precluded from exercising its own judgment [citation omitted]" *(423 S. Salina St. v City of Syracuse,* 68 NY2d 474, 489, *cert denied* 481 US 1008).

In light of the intention of Congress to preempt State actions only to the limited extent that they impose additional or different labeling requirements than those imposed under Federal law, there would appear to be no constitutional or policy reason to preclude a State action in negligence that is based upon a violation of the Federal labeling standards.

Defendants argue that plaintiffs' claim is indistinguishable from the one that the court in *Moss* held was insufficient. However, the *Moss* decision dealt with another section of the FHSA, and was a motion for summary judgment, which involves a different standard of review than a motion to amend *(see, Daniels v Empire-Orr, Inc.,* 151 AD2d 370, 371). Moreover, the court in *Moss* held that a State tort action could not be said to be meritless unless there was no factual showing to support the action.

In the procedural posture of the motion to amend here, it is sufficient that plaintiffs have stated a claim that is valid upon its face. Additionally, plaintiffs have supported their allegations with the affidavit of an expert, whereas defendants have produced no evidence to show that the facts and opinions alleged are "obviously not reliable or are insufficient" *(Daniels*

142

*v Empire-Orr, Inc., supra,* at 371; *see, Jenkins v Day & Co., supra* [expert's affidavit that defendant's label did not comply with FHSA raised triable issue of fact and stated valid negligence claim based upon violation of the Act]).

## V

■ With respect to plaintiffs' claims for negligent infliction of emotional distress, the court properly denied that part of defendants' motion for summary judgment as it related to Mr. Wallace, John, III, and Jeffrey. According to the deposition testimony, all three were exposed to the fire and sustained physical injuries when attempting to rescue Mrs. Wallace. Thus, all three were within the "zone of danger" for purposes of recovery for negligent infliction of emotional distress. A plaintiff may be placed in the "zone of danger" when he or she attempts to rescue a loved one *(Hass v Manhattan & Bronx Surface Tr. Operating Auth.,* 204 AD2d 208, *lv denied* 84 NY2d 811). With respect to Jennilyn, however, the court erred in denying that part of defendants' motion for summary judgment. The deposition testimony established that Jennilyn ran out of the house when the fire began and, thus, was at no time within the zone of danger.

## VI

■ In light of the absence of proof that plaintiffs' request to depose the technical director of Parks was unreasonable or improper, the court properly denied defendants' cross motion for a protective order *(see, Central Buffalo Project Corp. v Rainbow Salads,* 140 AD2d 943; *Dattmore v Eagan Real Estate,* 112 AD2d 800).

## VII

Accordingly, the order of Supreme Court should be modified by granting in part the motion of defendants for summary judgment seeking dismissal of the claim brought on behalf of Jennilyn for negligent infliction of emotional distress, and otherwise should be affirmed.

FALLON, J. P., WESLEY and DAVIS, JJ., concur.

Order unanimously modified, on the law, and, as modified, affirmed, without costs, in accordance with the opinion by BOEHM, J.