**PENNSYLVANIA GENERAL INSURANCE COMPANY, as Subrogee of Barry and Susan Gross, Plaintiff,**

v.

**David J. LANDIS t/a Netherwood Finishing Station, Defendant,**

**and**

**Netherwood Finishing Station, Inc. Defendant, Third–Party Plaintiff,**

v.

**Parks Corporation, Third–Party Defendant.**

**and**

**David J. Landis, Plaintiff,**

v.

**Parks Corporation, Robert Forst, and John Does 1 through 10 (a fictitious designation for various suppliers and distributors of Parks products), Defendants.**

**Nos. CIV.99–1158, 00–1379.**

United States District Court, D. New Jersey.

May 2, 2000.

Ann M. Mohan, Cuyler, Burk, Parsippany, NJ, for Third Party Defendant in 99–1158.

Allan Maitlin, Sachs, Maitlin, Fleming, Greene, Wilson & Marotte, West Orange, NJ, for Defendant—Third Party Plaintiff in 99–1158.

Thomas E. Hood, Thomas E. Hood, P.A., Plainfield, NJ, for Plaintiff in 00–1379.

## OPINION

HOCHBERG, District Judge.

This matter comes before the Court on a motion for summary judgment filed by Parks Corporation ("Parks") pursuant to Fed.R.Civ.P. 56, seeking judgment in Parks' favor on the third party complaint filed by third party plaintiff Netherwood Finishing Station, Inc. ("Netherwood"). Parks also submits an *in limine* motion to bar the testimony of Netherwood's expert at trial. Additionally, this Court *sua sponte* consolidates the Complaint filed by David J. Landis against Parks and Robert Forst ("Forst") on March 23, 2000, with the instant action.

For the reasons stated herein, this Court dismisses Count I of the Complaint in civil action number 00–1379 (the "Second Complaint") with prejudice, and dismisses Count II of that Complaint without prejudice. Parks' motion for summary judgment in Civil action number 99–1158 is granted and its *in limine* motion is, therefore, denied as moot.

Subject matter jurisdiction is properly pled pursuant to 28 U.S.C. § 1330. The Court also has supplemental jurisdiction over the state law claims in civil action number 99–1158 pursuant to 28 U.S.C. § 1367(a) because the state law claims in that action are so related to the federal claims arising under 15 U.S.C. § 1261, *et seq.*, the Federal Hazardous Substances Act ("FHSA"), that together they form the same case or controversy.

## I. STANDARD OF REVIEW

Pursuant to Rule 56(c), a motion for summary judgment will be granted

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

See also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In other words, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the non-moving party. *See Peters v. Delaware River Port Auth. of Pa. and N.J.*, 16 F.3d 1346, 1349 (3d Cir.1994).

Substantive law controls the inquiry into which facts are "material." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. An issue is "genuine" if a reasonable jury could decide the issue in the nonmovant's favor. *Id.* Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.; accord Ridgewood Bd. of Educ. v. M.E.*, 172 F.3d 238, 252 (3d Cir.1999) (*citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

The party seeking summary judgment always bears the initial burden of production. *Celotex Corp.*, 477 U.S. at 323, 106 S.Ct. 2548. This requires the moving party to establish either that there is no genuine issue of fact and that the moving party must prevail as a matter of law, or to demonstrate that the nonmoving party has

not shown the requisite facts relating to an essential element of an issue on which it bears the burden. *See Id.* at 322–23, 106 S.Ct. 2548. Once the party seeking summary judgment has carried this initial burden, the burden shifts to the nonmoving party. To avoid summary judgment, the nonmoving party must demonstrate facts supporting each element for which it bears the burden and it must establish the existence of "genuine issue[s] of material fact" justifying trial. *Miller*, 843 F.2d at 143; *see also Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. 2548.

However, at the summary judgment stage, this Court neither weighs the evidence nor makes credibility determinations; these tasks are within the sole domain of the fact-finder. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Therefore, to demonstrate a genuine issue of material fact, the summary judgment opponent need not produce evidence so strong that it mandates a decision in its favor. Rather, the party opposing summary judgement must adduce "evidence on which the jury could reasonably find for the [nonmovant]." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. "The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." *Id.; see also In re Headquarters Dodge*, 13 F.3d 674, 679 (3d Cir.1993). "Speculation and conclusory allegations do not satisfy this duty." *Ridgewood Bd. of Educ.*, 172 F.3d at 252 (*citing Groman v. Township of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)).

It is clear that if a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Instead, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (*quoting First National Bank of Arizona v. Cities Ser-*

*vice Co.*, 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

## II. BACKGROUND

David Landis ("Landis") is the owner of Netherwood, a company specializing in finishing and re-finishing furniture. Landis has twelve years of experience in the furniture finishing business; he was trained by his father who had thirty-five years of experience. On September 13, 1998, the day of the accident which resulted in the instant litigation, Landis was working in the home of Susan and Barry Gross as a sub-contractor for Lauderdale Millwork Company ("Lauderdale"). Lauderdale was hired by the Gross family to build a home at 67 Linden Lane in Chatham, New Jersey.

On September 13, 1998, Landis was working in the library of the Chatham House; he was using Parks Lacquer Thinner to strip stain from the wood shelves. At some point prior to commencing his work, Landis read the MSDS's, the instructions, and the warning label for use of the Parks' product. While using Parks' product, Landis asserts that he taped over the electrical outlets in the room with painter's tape. However, at least one outlet was not taped, because a fan and a radio were plugged in and operating during Landis' application of the Parks product to the wood shelving. During his work, Landis claims he heard a "pop" and looked to his left where he saw a large ball of fire. The fire spread quickly through the house and a large portion of the residence was destroyed.

The investigation revealed that the cause of the fire was unintentional and Pennsylvania General Insurance Company ("Pennsylvania"), as insurer of the Gross' home, re-imbursed the Gross family for damage to the property. Pennsylvania then commenced the instant suborgation action against Landis and Netherwood, who, in turn, impleaded Parks, alleging failure to warn. These third-party claims are the subject of this motion.

The parties agree that Parks Lacquer Thinner comes within the purview of the FHSA. The Parks product is a hazardous substance under the FHSA[1]; and it is available for purchase by the general public[2]. The product is sold in general retail establishments, including Siperstein Paint, the store in which Landis purchased the product. Therefore, the parties correctly agree that Parks Lacquer Thinner is subject to the labeling requirements of the FHSA.

Both parties have retained experts who offer competing opinions as to whether or not the Parks' product label is in compliance with the FHSA. Parks' expert, Charles Jacobson, a former compliance officer with the Consumer Product Safety Commission, asserts that the label in this case is in compliance with the requirements of the FHSA. Netherwood's expert, chemical engineer Burton Z. Davidson, contends that the label does not comply with the requirements of the FHSA. Notwithstanding the competing opinions of these witnesses, the Court finds that summary judgment is appropriate because the question of whether or not the label complies with the requirements of the Act is a question of law, and no factual issues pertaining to this legal analysis are seriously disputed. *Moss v. Parks Corp.*, 985 F.2d 736, 741–42 (4th Cir.1993); *Canty v. Ever–Last Supply Co.*, 296 N.J.Super. 68, 81–83, 88, 685 A.2d 1365 (Law Div.1996).

## III. DISCUSSION

The counts at issue in Netherwood's third-party complaint in civil action number 99–1158 are inter-related. Count I involves a failure to warn claim and Count II involves an alleged violation of N.J.S.A. § 2A:58C, *et seq.*, the New Jersey Products Liability Act ("NJPLA").[3] Parks' liability on both counts, if any, requires an analysis of the preemption provision included in the FHSA.

---

1. The Act provides, in pertinent part:
   "(f) The term 'hazardous substance' means:
   1. (A) Any substance or mixture of substances which (i) is toxic ... (v) is flammable or combustible ... if such substance or mixture of substances may cause substantial personal injury or substantial illness during or as a proximate result of any customary or reasonably foreseeable handling or use ...
   (g) The term 'toxic' shall apply to any substance [ ] which has the capacity to produce personal injury or illness to man through ingestion, or absorption through any body surface."
   15 U.S.C. § 1261.
   *See also* 16 C.F.R. § 1500.14, which provides, in pertinent part:
   " § 1500.14 Products requiring special labeling under section 3(b) of the [FHSA].
   (3) Products containing 5 percent or more by weight of ... toluene (also known as toluol) ...
   (4) Methyl alcohol (methanol) and mixtures containing 4 percent or more by weight of methyl alcohol ..."

2. The Act provides, in pertinent part:
   "(p) The term 'misbranded hazardous substance' means a hazardous substance ... intended, or packaged in a form suitable for use in the household ..."
   15 U.S.C. § 1261.

   *See also* 16 C.F.R. § 1500.3(c)(10)(*l*), which provides, in pertinent part:
   "any [product] whether or not packaged, that under any customary or reasonably foreseeable condition of purchase, storage, or use may be brought into or around a house, apartment, or other place where people dwell, or in or around any related building or shed including, but not limited to, a garage, carport, barn, or storage shed. The term includes articles, such as polishers or cleaners, designed primarily for professional use but which are available in retail stores ... for nonprofessional use ... Size of unit or container is not the only index of whether the article is suitable for use in or around the household; the test shall be whether under any reasonably foreseeable condition of purchase, storage, or use the article may be found in or around a dwelling."
   *See also, Canty v. Ever–Last Supply Co.*, 296 N.J.Super. 68, 685 A.2d 1365 (Law Div.1996) (to be regulated by the FHSA product must be available for sale in retail stores).

3. Parks' *in limine* motion and Counts III and IV of the third-party complaint are dismissed as moot. As there will be no trial in this case, the *in limine* motion to bar expert testimony is irrelevant. Counts III and IV of the complaint involve claims for contribution and idemnification; because there is no liability in the instant case there can be no damages.

■ In addressing the issue of preemption, I am mindful that there is a strong presumption against preemption. The doctrine of preemption derives from the Supremacy Clause of the Constitution. *See* U.S. Const. Art. VI, § 2 ("This Constitution, and the Laws of the United States which shall be made in Perseverance thereof; ... shall be the Supreme Law of the Land; and the Judges in every State shall be bound thereby, anything in the Constitution or Laws of any State to the contrary notwithstanding."); *see also Moss v. Parks Corp.*, 985 F.2d at 738. A preemption analysis "starts with the assumption that the historic police powers of the States [are] not to be superseded by Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 517, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (*quoting Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947)). Therefore, "the purpose of Congress is the ultimate touchstone" of an examination of preemption claims. *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978) (*quoting Retail Clerks v. Schermerhorn*, 375 U.S. 96, 103, 84 S.Ct. 219, 11 L.Ed.2d 179 (1963)). The intent of Congress may be either explicit or implicit. *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (*citing Jones v. Rath Packing Co.*, 430 U.S. 519, 525, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977)).

■ However, in order for a state law to be implicitly pre-empted, the law in question must, in fact, conflict with federal law. *Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (*citing Pacific Gas & Elec. Co. v. State Energy Resources Conservation and Development Comm'n*, 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983)). Where a state law does not actually conflict with federal law, and where Congressional preemption is not explicit, preemption may only be found where federal law so occupies a particular field "as to make reasonable the inference that Congress left no room for the States to supplement it."

*Cipollone*, 505 U.S. at 516, 112 S.Ct. 2608 (*quoting Fidelity Fed. Sav. & Loan Assn. v. de la Cuesta*, 458 U.S. 141, 153, 102 S.Ct. 3014, 73 L.Ed.2d 664 (1982)).

■ In the instant case, Congressional preemption of the labeling of hazardous household products is express; there is no need to entertain an analysis of implied preemption. *Malone v. White Motor Corp.*, 435 U.S. at 505, 98 S.Ct. 1185 (where Congress has included a preemption provision that is a "reliable indicium of congressional intent with respect to state authority" the preemptive scope of the statute is governed by the express language); *see also California Federal Savings & Loan Assn. v. Guerra*, 479 U.S. 272, 282, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987) (where there is an express preemption provision in a statute, "there is no need to infer congressional intent to preempt state laws" from the other provisions of the statute). However, even where there is an express preemption provision the Court must still determine the "domain expressly preempted." *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 247 (3d Cir.1999) (*quoting Medtronic, Inc. v. Lohr*, 518 U.S. 470, 484, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996)).

Under Supreme Court and Third Circuit law, the appropriate analysis in determining the "domain expressly preempted" by a Congressional enactment "rests primarily on a 'fair understanding of congressional purpose' as discerned from the language ... and the 'statutory framework.'" *Hawkins*, 184 F.3d at 248 (*quoting Medtronic*, 518 U.S. at 485–86, 116 S.Ct. 2240, *Cipollone*, 505 U.S. at 530 n. 27, 112 S.Ct. 2608, and *Gade v. National Solid Wastes Management Ass'n*, 505 U.S. 88, 98 n. 2, 112 S.Ct. 2374, 120 L.Ed.2d 73 (1992)). In addition, a preemption analysis must integrate the "structure and purpose of the statute as a whole," and must not interpret the preemption provision in a manner at odds with the intent of Congress. *Medtronic*, 518 U.S. at 486, 116 S.Ct. 2240 (*quoting Gade*, 505 U.S. at 98, 112 S.Ct. 2374).

The FHSA, originally enacted in 1960, contained no preemption provision. The purpose of the Act was to "provide nationally uniform requirements for adequate cautionary labeling of packages of hazardous substances which are sold in interstate commerce and are intended or suitable for household use." *Moss*, 985 F.2d at 739 (*quoting* House Comm. On Interstate and Foreign Commerce, Federal Hazardous Substances Labeling Act, H.R.Rep. No. 1861, 86th Cong., 2d Sess. 2 (1960), reprinted in 1960 U.S.C.C.A.N. 2833, 2833). In 1966 Congress considered amendments to the Act, having recognized the difficulty inherent in allowing states to individually regulate the labeling of a particular hazardous substance. In recognition of the impracticality of having 50, potentially different, labeling requirements for a single substance, Congress recommended "a limited preemption amendment which would encourage and permit states to adopt requirements identical with the federal requirements for substances subject to the Federal Act, and to enforce them to complement Federal enforcement...." *Moss*, 985 F.2d at 739 (*quoting* House Comm. on Interstate and Foreign Commerce, Child Protection Act of 1966, H.R.Rep. No. 2166, 89th Cong., 2d Sess. 3 (1966), reprinted in 1966 5 U.S.C.C.A.N. 4095, 4096). In consideration of the aforementioned factors. Congress amended the FHSA in 1966 to add the following preemption provision:

> [I]f a hazardous substance or its packaging is subject to a cautionary labeling requirement under section 2(p) or 3(b) [subsec. (p) of this section or section 1262(b) of this title] designed to protect against a risk of illness or injury associated with the substance, no State ... may establish or continue in effect a cautionary labeling requirement applicable to such substance or packaging and designed to protect against the same risk of illness or injury unless such a cautionary labeling requirement is *identical* to the labeling requirement under 2(p) or 3(b)....

15 U.S.C. § 1261(b)(1)(A) (emphasis added).

■ It is beyond dispute that the plain language of the above provision preempts state laws that dictate labeling requirements not "identical" to the regulations embodied in the FHSA. *See*, e.g., *Comeaux v. National Tea Co.*, 81 F.3d 42, 44 (5th Cir.1996); *Moss*, 985 F.2d at 740. However, in the instant case, Netherwood alleges that Parks is liable under both the FHSA and the NJPLA for failure to warn. Although the question of whether a private right of action exists under the FHSA is one of first impression in this district, other courts considering the issue have held that the FHSA does not provide a private judicial remedy to a party injured by the introduction of a misbranded hazardous substance into the stream of commerce. *Riegel Textile Corp. v. Celanese Corp.*, 649 F.2d 894, 899 (2d Cir.1981); *Christenson v. St. Mary's Hospital, et. al.*, 835 F.Supp. 498, 501 (D.Minn.1993); *Palmer v. Liggett Group, Inc. et. al.*, 635 F.Supp. 392, 397 (D.Mass.1984); *Wallace v. Parks Corp., et. al.*, 212 A.D.2d 132, 140, 629 N.Y.S.2d 570 (1995). Persuaded by these precedents outside the Third Circuit, I find that the FHSA does not contain a private cause of action. Netherwood's FHSA claim thus fails.

Netherwood further claims under the NJPLA that "because the third party defendant inadequately labeled its product under the FHSA, a claim also exists under the New Jersey Products Liability Act for a failure to properly warn," or latent failure to warn. (TPP Br. at 18). Therefore, the Court must determine whether the preemption provision of the FHSA preempts state law tort actions alleging non-compliance with the labeling provisions of the FHSA.

■ While this question has never been addressed by the Third Circuit, the case law in other jurisdictions informs this Court's analysis. In an action virtually identical[4] to the case *sub judice*, the

---

**4.** The plaintiff in *Moss* alleged that the defendant, Parks Corporation, was liable in a tort

Fourth Circuit held, "[i]n an area of limited preemption such as the FHSA, a common law tort action based upon failure to warn may only be brought for noncompliance with existing federal labeling requirements ... if the plaintiff requests a label that is 'more elaborate or different' than the one required by the FHSA and its regulations, the claim is preempted." *Moss*, 985 F.2d at 740 (*quoting Worm v. American Cyanamid Co.*, 970 F.2d 1301 (4th Cir.1992)). Where a plaintiff alleges a violation of the federal labeling requirements as the basis of his tort action the claim is not preempted; but all claims premised upon labels different from those required by the FHSA are preempted by federal law. *Id.*

The Fourth Circuit based its conclusion, in large part, on its prior analysis of 7 U.S.C. § 136, *et seq.*, the Federal Insecticide. Fungicide. and Rodenticide Act ("FIFRA") a federal labeling act with a preemption provision similar to that found in the FHSA. This Court finds the analogy to the FIFRA an apt one, and Third Circuit law addressing the FIFRA is in accord with the Fourth Circuit's decision in *Moss*. *See, Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244 (3d Cir.1999).

In *Hawkins*, the Third Circuit addressed the preemptive effect of the FIFRA, holding that damage claims for improper labeling under the FIFRA are preempted if they impose requirements in addition to or different from those imposed by the EPA, the agency charged with enforcement of the FIFRA. *Hawkins*, 184 F.3d at 249 (internal citations and quotations omitted). By analogy, this Court holds that claims by Netherwood against Parks premised upon labeling in addition to or different from the labeling required under the FHSA are preempted.

It must therefore be determined whether a common law tort claim for failure to properly label under the FHSA is preempted. In *Hawkins*, 184 F.3d at 249,[5] the Third Circuit did not reach the question of whether such a damages claim would be preempted because the plaintiff in *Hawkins* did not claim that the defendant failed to label its product in accordance with the FIFRA and EPA regulations. This Court nonetheless concludes that a state common law claim based on a failure to properly label under the FHSA is not automatically preempted by the Act. *Hawkins*, 184 F.3d at 249; *Moss*, 985 F.2d at 740; *Gurrieri v. William Zinsser & Co., Inc.*, 321 N.J.Super. 229, 242–43, 728 A.2d 832 (App.Div.1999); *Canty*, 296 N.J.Super. at 84–85, 685 A.2d 1365; *Wallace*, 212 A.D.2d at 141, 629 N.Y.S.2d 570; *Busch v. Graphic Color Corporation, et. al.*, 662 N.E.2d 397 (1996) *Jenkins v. James B. Day and Co.*, 634 N.E.2d 998 (1994). Therefore, in addressing the tort claim raised by Netherwood, this Court must determine whether or not the label on the Parks Lacquer Thinner container complied with the requirements of the FHSA.

The labeling requirements of the FHSA are found in § 1261(p), and require that the label of a hazardous product:

(1) [ ] states conspicuously (A) the name and place of business of the manufacturer, packer, distributor or seller; (B) the common or usual name or the chemical name (if there be no common or usual name) of the hazardous substance or of

---

action for damages because it had failed to adequately label the paint thinner plaintiff was using. The paint thinner came into contact with the pilot light of a kerosene heater in the next room and erupted into flames, burning a large portion of plaintiff's body. The Fourth Circuit found that Parks had labeled the container in accordance with the FHSA and, as a result, was not liable in a tort action for damages.

**5.** The *Hawkins* Court noted that deciding that claims for improper labeling imposing requirements different from those of the EPA are preempted "does not in turn automatically preclude all state common-law damages claims. As the Supreme Court observed in *Medtronic*, 'if Congress intended to preclude all state common-law causes of action ...' it could have done so explicitly.... it could have stated that all remedies ... under state law ... are precluded." (internal citation omitted).

each component which contributes substantially to its hazard, unless the Secretary [Commission] by regulation permits or requires the use of a recognized generic name; (C) the signal word "DANGER" on substances which are extremely flammable, corrosive, or highly toxic; (D) the signal word "WARNING" or "CAUTION" on all other hazardous substances; (E) an affirmative statement of the principal hazard or hazards, such as "Flammable," "Combustible," "Vapor Harmful," "Causes Burns," "Absorbed Through Skin," or similar wording descriptive of the hazard; (F) precautionary measures describing the action to be followed or avoided, except when modified by regulation of the Secretary [Commission] pursuant to section 3 [15 U.S.C. § 1262]; (G) instruction, when necessary or appropriate, for first-aid treatment; (H) the word "poison" for any hazardous substance which is defined as "highly toxic" by subsection (h); (I) instructions for handling and storage of packages which require special care in handling or storage; and (J) the statement (i) "Keep out of the reach of children" or its practical equivalent, or, (ii) if the article is intended for use by children and is not a banned hazardous substance, adequate directions for the protection of children from the hazard, and

(2) on which any statement required under subparagraph (1) of this paragraph are located prominently and are in the English language in conspicuous and legible type in contrast by typography, layout, or color with the other printed matter on the label.

15 U.S.C. § 1261(p). Additional requirements for specific chemicals appear in 15 U.S.C. § 1262(b). For the sake of brevity. I will address only those requirements with which Netherwood asserts Parks failed to comply.[6]

---

**6.** The Court, having fully examined the Parks label and compared it to all requirements set forth in the FHSA, concludes that, in addition to compliance with the requirements of the

**15 U.S.C. § 1261(p)(1)(C):** The bottom half of the front label panel states "DANGER", and also states "EXTREMELY FLAMMABLE LIQUID AND VAPOR. VAPOR HARMFUL AND MAY CAUSE FLASH FIRE." As subsection (p)(1)(C) only requires that the label include the signal word "DANGER", the language included on the Parks label is more than adequate.

**15 U.S.C. § 1261(p)(1)(E):** "EXTREMELY FLAMMABLE LIQUID AND VAPOR. VAPOR HARMFUL AND MAY CAUSE FLASH FIRE", appears on the lower half of the front label panel. Because, as the circumstances in this case make clear, flash fires are the primary danger associated with the lacquer thinner, the above warning is sufficient to put consumers on notice of the "principal hazards" associated with the product.

**15 U.S.C. § 1261(p)(1)(F):** The back label panel of the Parks Lacquer Thinner container displays a detailed list of precautions to be followed in the use of the product. The label states, **"Precautions: Vapors may ignite explosively."** Keep away from heat, sparks and flame. VAPORS MAY CAUSE FLASH FIRE. Do not smoke. Turn off and extinguish all flames and pilot lights on stoves, heaters, water heaters, etc. Disconnect all electric motors and other sources of ignition during use and until all vapors are gone. Prevent build-up of vapors by opening all windows and doors to achieve cross-ventilation. If you can smell even a weak solvent odor, there is a real fire risk. Vapors are heavier than air and may spread over long distances. DO NOT use this product for any use that requires quantities of product to be spread over large surfaces (more than 4 square feet). The potential for fire and health effects increase dramatically. For any use that requires spreading over a large surface, use

---

FHSA specifically addressed in this opinion, the Parks label also complies with the FHSA and the regulations of the CPSC in all respects.

a non-flammable product. **USE ONLY WITH ADEQUATE VENTILATION IN WELL VENTILATED AREA.** Do not breathe vapors or-spray mist. Ensure fresh air entry during application and drying. If you experience eye watering, headache or dizziness or if there is a weak solvent smell, STOP. Leave the area and increase ventilation before continuing to avoid health and flammability risks. If air monitoring demonstrates vapor/mist levels are above applicable limits, wear appropriate properly fitted respirator (NIOSH/MSHA approved) during and after application ... "

Although Netherwood contends that the above exhaustive recitation of precautions is deficient, this Court finds that the extensive instructions for use of the Parks Lacquer Thinner detailed in this section are more than sufficient to meet the requirement that a hazardous substance label include information on precautionary measures. Netherwood's primary allegation is that the Parks label should have defined "sources of ignition", but no case law supports of this broad assertion. In point of fact, similar precautionary warnings on comparable substances have been held sufficient. *See,* e.g., *Moss,* 985 F.2d at 741–43; *Canty,* 296 N.J.Super. at 90–91, 685 A.2d 1365; *Gurrieri,* 321 N.J.Super. at 254–247, 728 A.2d 832; *Busch,* 214 Ill.Dec. 831, 662 N.E.2d at 407–08.

■ Netherwood contends that the Parks label was required to include a definition of "sources of ignition" based on industry standards contained in the Paint Industry Labeling Guide ("PILG") of the National Paint and Coatings Administration ("NPCA"). Without any legal authority. Netherwood baldly asserts that, where the Consumer Product Safety Commission ("CPSC") charged with enforcement of the FHSA has not promulgated sample label language for a specific product, this Court is required to analyze the industry standards for the product in making a determination of whether or not the label is in compliance with the requirements of the FHSA. This Court disagrees.

The case law holds that an analysis of compliance with the requirements of the federal statute is based on the statutory language and the promulgations of the CPSC, and does not require analysis of industry standards for all products as to which the CPSC has not provided sample labeling language. *See,* e.g., *Moss* 985 F.2d at 740–742, *Gurrieri,* 321 N.J.Super. at 233–235, 242–244, 728 A.2d 832; *Canty,* 296 N.J.Super. at 91–92, 685 A.2d 1365.

This Court declines to read additional requirements into an explicit and detailed labeling statute like the FHSA. Where the CPSC is silent on the precise language to be used in labeling, this Court's analysis will focus upon whether the actual label used by the manufacturer complies with the FHSA's requirements. As an aid in analysis, the Court may look to CPSC approved labels for products with similar dangers inherent in use. *See Canty,* 296 N.J.Super. at 91, 685 A.2d 1365. Finding that the flash fire propensity of the Parks Lacquer Thinner in this case is similar to the flash fire propensity of the contact adhesives referred on *Canty,* it is useful to compare the Parks label to that required by CPSC for contact adhesives. The sample language required on a label for contact adhesives requires that the label state:

DANGER
EXTREMELY FLAMMABLE
VAPORS MAY CAUSE FLASH FIRE
Vapors may ignite explosively. Prevent buildup of vapors— open all windows and doors— use only with cross-ventilation. Keep away from heat, sparks, and open flame.
Do not smoke, extinguish all flames and pilot lights, and turn off stoves, heaters, electric motors, and other sources of ignition during use and until vapors are gone. Close container after use. Keep out of the reach of children.

16 C.F.R. § 1500.133(b). The language on Parks' container is virtually identical to the CPSC language for flammable contact adhesives, and I find that the Parks label in this case is in compliance with the re-

quirements of the FHSA. Furthermore, Parks includes additional warnings beyond those that are required. The label in this case complies with both the letter and the spirit of the FHSA and the CPSC regulations.

Having analyzed each of the labeling requirements embodied in the FHSA, and having looked to the promulgations of the CPSC to determine whether additional requirements apply, I conclude as a matter of law that the label in this case complies with federal law. The label recites all the required warnings and does so in a type size and color sufficient to comply with the Act. Because the label complies with the federal statue, and because federal law preempts any state law that is not identical to the FHSA. I conclude that Parks is not liable based on any failure to warn under the NJPLA.

Turning now to the second action filed by Landis in this case, it is undisputed that the claims asserted in civil action number 00–1379 arise out of the same nucleus of operative facts as the claims asserted in civil action number 99–1158. Indeed, it is difficult for this Court to see why Landis did not marshal all his claims into a single complaint. Therefore, in the interest of judicial economy, these cases are consolidated.

Landis' Second Complaint is also dismissed. Count I of the Second Complaint alleges that the injuries sustained by Landis as a result of the accident on September 13, 1998 resulted from Park's failure to include adequate warnings on the Parks Lacquer Thinner container. Because the substance of this claim is the same as the claim in the First Complaint, this Court holds that the Parks label complied with all the requirements of federal law, and further holds that claims based on New Jersey state law that is not identical to the FHSA are preempted, Count I of the Second Complaint is dismissed with prejudice.

Because Count I of the Second Complaint is dismissed with prejudice this Court is without independent subject matter jurisdiction to as to Count II of the

Second Complaint. Count II alleges that Robert Forst, the general contractor, failed to provide a safe work environment, thereby proximately causing plaintiff's injuries. Count II of the Second Complaint does not involve a federal question and diversity does not exist because both plaintiff Landis and defendant Forst are citizens of New Jersey. Such claims could only be litigated in federal court if this Court decided to hear them as pendent state claims under 28 U.S.C. § 1367(a). "Pendent jurisdiction is a doctrine of discretion, not of plaintiff's right .... [C]ertainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *see also Weaver v. Marine Bank*, 683 F.2d 744, 746 (1982) ("if the federal count is subject to dismissal on a motion for summary judgment, then the district court should ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." (internal quotations and citations omitted)).

In determining whether or not to exercise pendent jurisdiction, *Gibbs* instructs this Court to consider judicial economy, convenience, and fairness to the litigants. *Id.* Furthermore, *Gibbs* makes clear that District Courts should avoid needless decisions of state law. *Id.* Count II of the Second Complaint involves only state law and, as Count I has been dismissed before trial, the *Gibbs* factors all lead to the conclusion that this Court should decline to exercise its discretion over the pendent claims. Therefore, Count II of the Complaint is dismissed without prejudice to Landis' ability to refile in state court.

## IV. *CONCLUSION*

For the reasons stated above, this Court grants Parks' motion for summary judgment, denies Parks' *in limine* motion as

moot, and dismisses civil action number 00–1379. An appropriate Order will issue.