IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
NOVEMBER 29, 2005 Session

## TAVARES FORD, On behalf of herself and all other similarly situated v. TOYS R US, INC.

**Direct Appeal from the Circuit Court for Shelby County**
**No. CT-003710-04     James F. Russell, Judge**

_____

**No. W2005-01117-COA-R3-CV - Filed March 9, 2006**
_____

In this appeal, we are asked to determine whether the circuit court erred when it dismissed the appellant's class action suit based on lack of standing and primary jurisdiction. On appeal, the appellant asserts that she had standing to bring her suit and that the circuit court should not have declined to exercise jurisdiction based on the doctrine of primary jurisdiction. We affirm.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. HIGHERS, J., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

D. Frank Davis, John E. Norris, Birmingham, AL; Sheila B. Renfroe, Memphis, TN, for Appellant

Sam B. Blair, Jr., Clinton J. Simpson, Memphis, TN, for Appellee

**OPINION**

### I. FACTS & PROCEDURAL HISTORY

Ms. Tavares Ford ("Ford" or "Appellant") purchased a necklace from Toys R Us, Inc. ("Toys R Us" or "Appellee") for her daughter. After discovering that the necklace was made of 100% lead, she no longer allowed her daughter to come into contact with the jewelry. Thereafter, Ford brought a class action suit against Toys R Us basing it on a claim for breach of warranty. The complaint alleged that Toys R Us knowingly sold a hazardous product to consumers. Toys R Us subsequently filed a motion to dismiss. Thereafter, Ford amended her complaint. The circuit court dismissed Ford's complaint stating that she lacked standing to bring such a claim. The circuit court

alternatively dismissed Ford's complaint declining to exercise jurisdiction pursuant to the doctrine of primary jurisdiction. When the circuit court declined to exercise jurisdiction pursuant to the doctrine of primary jurisdiction, it stated that

> [t]his case involves a consumer product that plaintiff alleges is unreasonably dangerous and defective because it is made entirely of lead. In her First Amended Complaint, plaintiff cites and relies on a plethora of studies and reports documenting the hazards of lead. One of the sources relied upon is the Consumer Product Safety Commission ("CPSC"). The CPSC was created by the Consumer Product Safety Act ("CPSA"), Public Law 92-573, 15 U.S.C. § 2051, et seq., in order to, *inter alia*, protect the public from unreasonable risks of injury, and to develop uniform safety standards and reduce conflicting state and local regulations concerning consumer products. 15 U.S.C. § 2051(b). The CPSA authorizes the CPSC to investigate the safety of consumer products and to ban products it finds hazardous. Under the CPSA, the CPSC has essentially a two-fold function: (1) it gathers data relating to health impairments and economic losses associated with consumer products; and (2) it develops, promulgates, and enforces consumer product-safety standards, rules, and bans. See generally 6 Fed. Proc. Forms § 15:1.
>
> Aside from establishing a rule on its own initiative, any interested person can petition the CPSC to initiate a "rulemaking" pursuant to 15 U.S.C. § 2058(I). In addition, 15 U.S.C. § 2054 gives the CPSC the authority to collect information concerning potentially hazardous products directly from the consumer. Anyone may report a hazard, regardless of whether personal injury or death resulted from the use of a particular product, by simply calling a toll-free number or completing a brief online form. See http://www.cpsc.gov/talk.html. There is yet another option available under the CPSA. If the CPSC finds a particular product presents imminent and unreasonable risk of death, serious illness, or severe personal injury, it can declare the product to be an "imminent hazard" pursuant to 15 U.S.C. § 2061. Under this section, the CPSC is empowered to file an action in any United States district court against the retailer of a product deemed to be an "imminent hazard." Among the temporary and permanent relief available is the issuance of a recall, the repair or replacement of the product, and the refund of the purchase price. See 15 U.S.C. § 2061(b)(1). Similar remedies are available under 15 U.S.C. § 2064(d) for non-compliance with a consumer product safety rule.

Congress granted the CPSC broad jurisdiction over the regulation of thousands of consumer products. The jewelry at issue here clearly satisfies the definition of a consumer product and lies within the regulatory authority of the CPSC. This much is evinced by the CPSC's issuance of recall notices for similar lead-containing jewelry. See, e.g., First Amended Complaint at para. 15. In this lawsuit, plaintiff seeks to both recover the purchase price of the necklace and enjoin Toys from continuing to sell lead jewelry. As discussed above, pursuant to the CPSA, the CPSC is authorized to provide these remedies.

In fact, during the pendancy of this Motion to Dismiss, the CPSC announced a new policy addressing lead in children's jewelry (the "Policy"). See Press Release, U.S. Consumer Product Safety Commission, CPSC Announces New Policy Addressing Lead in Children's Metal Jewelry, Release #05-097 (Feb. 3, 2005). The Interim Enforcement Policy issued by the CPSC's Department of Compliance describes the approach the office will follow in addressing children's jewelry containing lead. Specifically, it details the criteria for deeming an article of jewelry a "banned hazardous substance" under the Federal Hazardous Substances Act ("FHSA"). See 15 U.S.C. § 1261(f)(1)(A); 15 U.S.C. § 1261(q)(1)(A). As outlined in the Policy, CPSC staff will conduct tests of all component parts of a particular piece of jewelry to determine whether to pursue enforcement under the FHSA. If the tests reveal lead content above a prescribed minimum threshold, the CPSC will determine, on a case by case basis, whether to pursue corrective action. In light of this regulatory scheme and the facts of this case, the Court finds that the CPSC is better situated and equipped to address the issues raised in this lawsuit. Indeed, the CPSC has already invoked its jurisdiction with regard to the subject matter embraced within the Amended Complaint. The Court will, therefore, decline to exercise jurisdiction in deference to the primary jurisdiction of the CPSC.

(footnotes omitted).

## II. ISSUES PRESENTED

Appellant has timely filed her notice of appeal and presents the following issues for review:
1. Whether the circuit court erred when it declined to exercise jurisdiction based on the doctrine of primary jurisdiction;

2.      Whether the circuit court erred when it held that Appellant did not sufficiently state a claim for breach of warranty because she did not affirmatively allege in her complaint that she demanded a refund; and

3.      Whether the circuit court erred when it held that the economic loss doctrine barred Plaintiff's claims for punitive damages.

Additionally, Appellee has presented one issue for review:

4.      Whether the circuit court erred when it ruled the "no injury" line of cases did not apply to all of Appellant's claims.

For the following reasons, we affirm the decision of the circuit court.

## III. DISCUSSION

While both parties have presented numerous issues on appeal, we find one that is dispositive of this case. On appeal, Appellant asserts that the circuit court erred when it declined to exercise jurisdiction based on the doctrine of primary jurisdiction. Specifically, Appellant has asserted that declining to exercise jurisdiction based on the doctrine of primary jurisdiction was erroneous because (1) there is no private right of action under the CPSA; (2) the CPSC cannot adjudicate a private dispute; (3) the CPSA preserves all common law claims. Taking each of Appellant's assertions in turn, not one demonstrates reversible error.

First, Appellant asserts that the circuit court erred when it dismissed her claims based on the doctrine of primary jurisdiction because the CPSA does not create a private right of action. However, while the cases cited by Appellant in her brief on appeal set forth the proposition that courts may not provide relief to an individual for a claim based on the CPSA, *see, e.g., Avery v. Gas Prods., Inc.*, 18 F.3d 448 (7th Cir. 1994); *Penn. Gen. Ins. Co. v. Landis*, 96 F. Supp. 2d 408 (D. N.J. 2000), nothing in the CPSA precludes Appellant from petitioning the CPSC to grant the relief requested by Appellant in her complaint, *see* Consumer Product Safety Act, Pub. L. No. 92-573, 86 Stat. 1207 (codified as amended at 15 U.S.C. 2051, et seq.).

Second, Appellant contends that the circuit court erred when it dismissed her complaint based on the doctrine of primary jurisdiction because the CPSC cannot adjudicate a private dispute such as this one. Although the CPSC cannot adjudicate a dispute such as this one, the CPSC can provide the relief Appellant seeks if it determines that Appellant's claims are an imminent hazard as Appellant claims. *See* 15 U.S.C. § 2061(b)(1) (2004).

Finally, Appellant contends that dismissing her complaint based on the doctrine of primary jurisdiction was erroneous because the CPSA preserves all common law claims. Relying on *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290 (1976), Appellant contends that, because her common law claims are not wholly inconsistent with CPSA, a ruling by the CPSC would not preclude her common law claims. However, under the doctrine of primary jurisdiction, a court may defer

adjudicating a claim to an administrative agency that has the necessary expertise to dispose of an issue even though the court has jurisdiction. *See* 73 C.J.S. *Pub. Admin. Law & Procedure* § 72 (2004). When the circuit court declined to exercise jurisdiction based on the doctrine of primary jurisdiction, it did not do so because Appellant did not have a proper claim that it may adjudicate. Rather, the circuit court dismissed the complaint because it has found that an administrative agency with concurrent jurisdiction was better suited to redress Appellant's claims.

In this case, the circuit court did not err when it declined to exercise jurisdiction in deference to the primary jurisdiction of the CPSC. "Under the doctrine of primary jurisdiction, a court may suspend review of a claim when its resolution involves issues which, under a regulatory scheme, have been placed within the special competence of an administrative body with primary responsibility for government supervision or control of the industry or activity involved . . . ." 73 C.J.S. *Pub. Admin. Law & Procedure* § 72 (2004). Under the doctrine of primary jurisdiction, "parties resort first to an administrative agency before they seek judicial action involving a question within the competence of that agency." ***Freels v. Northrup***, 678 S.W.2d 55, 57 (Tenn. 1984) (citing *Terrell Oil Corp. v. Atl. Richfield Co.*, 468 F. Supp. 860 (E.D. Tenn. 1977)). When a court must decide whether to defer to an administrative agency under this doctrine, it must determine if "deferral [will] be conducive toward uniformity of decision between courts and the agency, and [if] deferral [will] make possible the utilization of pertinent agency expertise." ***Id.*** (citing *Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289 (1973); *Great N. Ry. Co. v. Merchs. Elevator Co.*, 259 U.S. 285 (1922); *Texas & P. Ry. Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907)). Whether to apply the doctrine of primary jurisdiction is discretionary. ***Id.*** at 58 (citing *Great N. Ry. Co.*, 259 U.S. 285; *Kerr v. Dep't of Game, State of Washington*, 542 P.2d 467 (Wash. Ct. App. 1975)).

Thus, we must first determine whether the claims made in this case are within the competency of the CPSC under the CPSA. We find that these claims do fall within the competency of the CPSC. As the circuit court correctly noted, among the CPSC's stated purposes under the CPSA, the CPSC was created "to protect the public from unreasonable risks of injury . . . and to develop uniform safety standards and reduce conflicting state and local regulations concerning consumer products." (T.R. Vol. I, p. 179). The jewelry in question is a consumer product. *See* 15 U.S.C. § 2052(a)(1) (defining consumer product under CPSA). Further, this type of product claim is precisely what the CPSA intended the CPSC to monitor and control.

Next, we must determine whether the circuit court properly found that deferral to the CPSC will promote uniformity of decisions between the courts and the CPSC. In this case, the CPSC is endowed with the power to address the relief requested by Appellant if this product is considered an imminent hazard, *see* 15 U.S.C. § 2061(b)(1), which Appellant has alleged that this product is in her complaint. Allowing the CPSC to determine first whether a certain piece of jewelry is defective because of its lead content will eliminate conflicting court judgments as to the defective nature of this type of product. In addition, Appellant has also requested that Toys R Us be enjoined from selling this product nationwide. Obviously, the CPSC is in a better position to mandate compliance assuming that the CPSC found the product to be defective.

Finally, we must determine whether the CPSC's expertise may be utilized by deferring Appellant's claims to it. Appellant asserts that no special expertise is necessary to determine the outcome of her claims. We disagree. Here, the CPSC's expertise in this area could be utilized to determine whether this particular piece of lead jewelry is in fact unreasonably dangerous or defective as Appellant claims. As Appellant has noted in her first amended complaint, the CPSC has already done research and testing with regards to the claims made by Appellant. (T.R. Vol. I, pp. 19-20, 22-24). In addition, according to the Policy, the CPSC will conduct tests on pieces of lead jewelry to determine whether that jewelry should be a banned substance under the FHSA. . *See* Press Release, U.S. Consumer Product Safety Commission, CPSC Announces New Policy Addressing Lead in Children's Metal Jewelry, Release #05-097 (Feb. 3, 2005), *available at* http://www.cpsc.gov/cpscpub/prerel/prhtml05/05097.html. Further, this claim is generally not within the competence of the courts. While a breach of warranty claim is generally within the competence of the courts, a determination of the hazardous effects of lead and its reasonable use in children's jewelry is within the specialized expertise of the CPSC.

Thus, we can find no error in the circuit court's decision to decline to exercise jurisdiction based on the doctrine of primary jurisdiction. Accordingly, the decision of the circuit court is affirmed. All other issues presented for appeal in this case are pretermitted.

## IV.   CONCLUSION

For the foregoing reasons, we affirm the decision of the circuit court. Costs of this appeal are taxed to Appellant, Tavares Ford, and her surety, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, JUDGE